**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DOUGLAS E. FARMER,** | ) | |
| | ) | |
| **Petitioner/Defendant,** | ) | |
| | ) | **CIVIL NO. 09-337-GPM** |
| **vs.** | ) | |
| | ) | **CRIMINAL NO. 04-30139-GPM** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent/Plaintiff.** | ) | |

# <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

On May 4, 2009, Petitioner Douglas E. Farmer (Mr. Farmer) filed a Motion to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody (Doc. 3) pursuant to 28 U.S.C. § 2255.

Mr. Farmer then filed a supplement to the motion (Doc. 6) on July 15, 2009.  After receiving an

extension of time, the Government responded to the motion and the supplement on March 1, 2010

(Doc. 10), and Mr. Farmer filed a reply on April 21, 2010 (Doc. 13).  Mr. Farmer's motion is based

on a claim of ineffective assistance of counsel before and during trial, at sentencing, and on direct

appeal.  For the reasons set forth below, Mr. Farmer's motion is denied.

## <u>BACKGROUND</u>

On November 18, 2004, a grand jury indictment was returned against Mr. Farmer.  Mr.

Farmer, along with thirteen others, was charged with conspiracy to distribute or possess, with intent

to distribute, 5 kilograms or more of cocaine and cocaine base, and 100 kilograms or more of

marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 18 U.S.C. § 2 (Criminal

Case No. 30139-01-GPM, Count I).  On March 15, 2007, after a seven-day trial, the jury returned

a verdict against Mr. Farmer.  The jury also found by special verdict that the amount of cocaine involved in the conspiracy was at least 5 kilograms.  The Presentence Investigation Report (PSR), dated June 25, 2007, included a four-point adjustment for Mr. Farmer's leadership role pursuant to U.S.S.G. § 3B1.1(a), and a two-point adjustment for weapons possessed during the offense pursuant to U.S.S.G. § 2D1.1(b)(1), for a total offense level of 43.[1]  Mr. Farmer, through his attorney, lodged objections to the PSR.  The Court adopted the PSR without change, and Mr. Farmer was sentenced on June 25, 2007, to 240 months imprisonment, five years supervised release, a fine of $1,250, and a special assessment of $100—the mandatory *minimum* sentence and well below the advisory guideline range of life.  A notice of appeal was filed on behalf of Mr. Farmer the same day.  On appeal, the Seventh Circuit held that the district court did not improperly deny Mr. Farmer's motion under the Speedy Trial Act. *United States v. Farmer*, 543 F.3d 363, 368-69 (7th Cir. 2008).

Mr. Farmer now seeks relief under § 2255.  In his Motion to Vacate, Set Aside, or Correct Sentence, Mr. Farmer claims he received ineffective assistance of counsel because: (1) counsel failed to argue for a buyer-seller instruction; (2) counsel failed to raise on appeal the motion to suppress wiretaps that was denied by the district court; (3) counsel failed to challenge the expert witness testimony on direct appeal; (4) counsel failed to challenge the relevant conduct attributed to Mr. Farmer; (5) counsel failed to ensure that the jury was properly instructed; (6) counsel failed to raise certain objections to the PSR at sentencing or on direct appeal; (7) counsel did not understand the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220 (2005); (8) counsel failed to challenge the Government's lack of proof that Mr. Farmer was involved in a

---

[1] Under the 2006 Federal Sentencing Guidelines, in place at the time of Mr. Farmer's sentencing, offenses involving in excess of 1.5 kilograms of cocaine base establish a base offense level of 38.  Mr. Farmer's total offense level was 44, but pursuant to Chapter 5, Part A, a total offense level of more than 43 is to be treated as an offense level of 43.  This results in a Guideline range of life.

conspiracy; (9) counsel failed to challenge certain aspects of Mr. Farmer's sentence on direct appeal; and (10) counsel failed to raise a variety of other issues on direct appeal. Mr. Farmer filed a supplement to the motion with additional arguments regarding the validity of his sentence, and he also raised new arguments in his reply to the Government's response.

## ANALYSIS

### A.    Legal Standard

####     1.   Evidentiary Hearing

An evidentiary hearing on a motion brought pursuant to 28 U.S.C. § 2255 is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001); *Daniels v. United States*, 54 F.3d 290, 293 (7th Cir. 1995); *United States v. Taglia*, 922 F.2d 413, 419 (7th Cir. 1991) ("[I]f there is no reason to suppose that a hearing would produce evidence justifying the grant of a new trial, there is no reason to hold a hearing."). Additionally, the Seventh Circuit has noted that "[n]o hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992), *citing United States v. Frye*, 738 F.2d 196 (7th Cir. 1984).

Mr. Farmer in his § 2255 motion requests an evidentiary hearing. After careful review of the motion, the papers, and the entire record, the Court concludes that any factual matters raised by the motion may be resolved on the record and thus, an evidentiary hearing is not required in this case. Accordingly, the Court will now resolve the motion without a hearing.

2.   Motion to Vacate, Set Aside or Correct Sentence

The Court must grant a § 2255 motion when a prisoner's "sentence was imposed in violation of the Constitution or laws of the United States," the Court lacked jurisdiction, the sentence exceeded the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).   Mr. Farmer is entitled to bring a claim of ineffective assistance of counsel before this district court even though he did not previously raise the issue on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 505 (2003).   Indeed, "the § 2255 motion often will be ruled upon by the same district judge who presided at trial.   The judge, having observed the earlier trial, should have an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial." *Id.* at 506.   Here, Mr. Farmer's claims fall under § 2255 because, he alleges, the ineffective assistance of his counsel resulted in a "sentence [being] imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).

3.   Ineffective Assistance of Counsel under *Strickland*

In *Strickland v. Washington*, the Supreme Court recognized that the "right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary . . . " 466 U.S. 668, 685 (1984).   Moreover, a defendant's "right to counsel is the right to the *effective* assistance of counsel." *Id.* (*citing McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)) (emphasis added).   To establish ineffective assistance of counsel, Mr. Farmer bears a heavy burden.   For such claims, the burden falls squarely on the defendant to show (1) counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) such deficient representation prejudiced the defendant. *Strickland*, 466 U.S. at 687-88.

With respect to the first prong, the *Strickland* Court declined to adopt specific guidelines for what constitutes reasonable representation by an attorney. *Id.* at 688. Instead, the Court stated that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* The Court did, however, discuss a criminal defense attorney's basic obligations which include, but are not limited to, the duty of loyalty, duty to avoid conflicts of interest, advocate for and consult with the defendant, duty to keep the defendant informed, and the duty to apply her skill and knowledge. *Id.*

In reviewing a claim of ineffective assistance of counsel, a court is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002), *quoting Strickland*, 466 U.S. at 689. The defendant must overcome the presumption that defense counsel "rendered adequate assistance and . . . made significant decisions in the exercise of his or her reasonable professional judgment." *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004), *quoting United States v. Traeger*, 289 F.3d 461, 470 (7th Cir. 2002).

As for the second prong of *Strickland*, the attorney's deficient representation must have an adverse effect to constitute prejudice. 466 U.S. at 691. "Even if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they *actually* had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693 (emphasis added). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Mr. Farmer appears to base the majority of his ineffective assistance arguments on his incorrect calculation of the United States Sentencing Guidelines (Guidelines) range and counsel's alleged failure to provide him and the court with briefs explaining why counsel did not pursue every possible argument on appeal.   However, Mr. Farmer was sentenced far below the advisory Guidelines range, and he has misstated the law with regard to counsel's obligations on appeal. These factors inherently lessens the force of Mr. Farmer's ineffective assistance claims. *Cf. Welch v. United States*, 604 F.3d 408, 412 n. 5 (7th Cir. 2010) (collecting cases).

B.      **Mr. Farmer's Claim of Ineffective Assistance**

        1.   Counsel's Failure to Argue a Buyer-Seller Instruction

Mr. Farmer first argues that "the court record fails to evidence any testimony, facts or evidence" to establish anything beyond a buyer-seller relationship and thus, counsel's failure to argue this represented an omission that "may well have changed the outcome" of the jury's decision (Doc. 3, p. 9).

Mr. Farmer's claim fails to establish actual prejudice required by *Strickland*, as the argument for a buyer-seller relationship is against the weight of the evidence.   The record demonstrates that the testimony of those indicted in the conspiracy expressly implicated Mr. Farmer.   For example, the testimony of co-defendant Charles Howliet alone could have been sufficient evidence for the jury to find that a conspiracy existed, instead of a mere buyer-seller relationship:

> Q: After you were contacted by Douglas Farmer, did you agree to do work
> together?
> A: Yes.
> Q: What did you do for him?
> A: Sell drugs.
> Q: And did you work with anyone besides Douglas Farmer at that time?
> A: Yes.

Q: Who else?

A: Jerel was there.

Q: And do you know Jerel's last name?

A: Jerel Brown.

Q: And is Jerel charged with you in this case?

A: Yes.

  . . . .

Q: Charles, what kind of work did the three of you do?

A: We sold crack.

Q: And how did you go about getting this crack, did somebody make
it, did you buy it, tell us about it?

A: Douglas Farmer fronted me drugs.

Q: And who would make or how – would the crack come already rocked up
or made up into crack or would it have to be made or how did that work?

A: Sometime already made up; sometime we'll make it up.

Q: When you say "we," who are you talking about?

A: Me, Douglas Farmer, and Jerel.

  . . . .

Q: And would you – could you estimate during, say, the first month or so that
you lived there at Parson's Place, how much crack cocaine you guys cooked
up and sold?

A: For the first month?

Q: Yes.

A: At least two or three.

Q: Two or three what?

A: Kilos.

(Doc. 849, pp. 544-47.)  The testimony of co-defendant Manfred McGee provides another example

of the absence of a buyer-seller relationship:

Q: Okay.  In total, could you estimate for us how many kilos of cocaine did
you deal with Dred, with Mr. Farmer?

A: Whew.  I mean, just estimate guess off my head, I'd say probably about
50.

Q: And that was kilos of powder cocaine.

A: Yes.

Q: Did you ever deal marijuana with Mr. Farmer?

> A: Yes, I have.
>
> Q: And that was during this same time frame?
>
> A: Yes.
>
> Q: And could you estimate for us how many pounds or kilos of marijuana, whichever you would be more comfortable with, pounds or kilos, of marijuana that you dealt with him?
>
> A: Over 600 to 700 pounds.
>
> Q: Pounds. Okay. And did you also you talked (sic) about doing some crack cocaine or dealing in some crack cocaine with him?
>
> A: Yes.
>
> Q: And could you estimate for us the total amount of crack cocaine?
>
> A: Over like about six keys.
>
> Q: Six keys of crack cocaine?
>
> A: Yes.

(Doc. 848, pp. 163-64.) In spite of this and other evidence, the jury still was appropriately instructed

that evidence of a mere buyer-seller relationship was insufficient to establish conspiracy:

> The existence of a simple buyer-seller relationship between a defendant and another person, without more, is not sufficient to establish a conspiracy, even where the buyer intends to resell the illegal controlled substance. The fact that a defendant may have bought an illegal controlled substance from another person or sold an illegal controlled substance to another person is not sufficient without more to establish that a defendant was a member of the charged conspiracy.

(Doc. 888, pp. 1144-45). The instructions further detailed factors in considering a conspiracy versus

a mere buyer-seller relationship. *Id.* at 1145. The jury is presumed to follow the instructions given

to them, and "[t]his presumption is only overcome if there is an overwhelming probability that the

jury was unable to follow the instruction as given." *United States v. Eberhart*, 434 F.3d 935, 939

(7th Cir. 2006). Here, Mr. Farmer offers no evidence to rebut this presumption. The jury

appropriately considered whether the evidence provided by Charles Howliet, Manfred McGee, and

others demonstrated only a buyer-seller relationship, and the jury rejected this possibility.

Therefore, irrespective of whether counsel's decision not to argue for the existence of a buyer-seller relationship was deficient (which, given the weight of the evidence, this Court believes it was not), Mr. Farmer cannot satisfy the second prong of *Strickland* because he suffered no prejudice.

    2.  Counsel's Failure to Appeal the Denial of the Motion to Suppress Wiretaps

       Mr. Farmer maintains that his counsel failed to argue on appeal that the denial of a motion to suppress the wiretaps was erroneous, and that this failure constituted ineffective assistance under *Anders v. California*, 386 U.S. 738 (1967) (Doc. 3, p. 10). He claims also that the failure to raise this challenge on direct appeal could have changed the outcome of his case. *Id.*

       Mr. Farmer has failed to establish that counsel's conduct did not meet the standard of reasonably effective assistance and thus, he cannot satisfy the first prong of *Strickland* with this claim. Counsel's decision not to file an *Anders* brief with the Court explaining his decision not to appeal the denial of the motion to suppress is immaterial because counsel appealed another issue in the case: the Speedy Trial Act. *Cf. Anders*, 386 U.S. at 744 (finding that a request to withdraw from case must be accompanied by brief detailing any issue in record that might support appeal, as opposed to simply filing no-merit letter). In claims of ineffective assistance of counsel on appeal, the Court examines the record to compare "significant and obvious" issues which could have been raised to those which were raised. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985). However, this does not signify that counsel is obligated to advance on appeal every argument supported by the trial record. *Id.* at 647. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* at 646.

       Here, although counsel has not provided any insight as to why he chose not to pursue the motion to suppress the wiretaps, the record indicates that this argument is objectively weak because

the government's burden in complying with the wiretapping statute "is not great." *United States v. Zambrana*, 841 F.2d 1320, 1329 (7th Cir. 1988), *quoting United States v. Anderson*, 542 F.2d 428, 431 (7th Cir. 1976).  Judge Stiehl, who presided over the motion hearing, noted that the Government had provided detailed justification for the extension of the wiretap (Doc. 513).  *See United States v. Ceballos*, 302 F.3d 679, 684 (7th Cir. 2002) ("[A] violation of wiretap statute is not grounds for suppression unless the defendant can establish bad faith or prejudice.").  When considering this burden, it is objectively reasonable for Mr. Farmer's counsel to determine that such a claim would be weaker to raise on appeal.  Therefore, Mr. Farmer has failed to establish that Counsel's decision not to appeal the denial of the motion to suppress was in any way deficient, and he has not meet his burden as established by *Strickland*.

Even if counsel's conduct was objectively unreasonable, *arguendo*, Mr. Farmer cannot establish that he suffered any actual prejudice.  With Charles Howliet's testimony (*supra* pp. 6-7) as just one example, there was sufficient evidence—even if the wiretaps had been excluded—to establish a conspiracy.  Mr. Farmer has not established deficient performance or, in the alternative, actual prejudice and as such, his claim of ineffective counsel in this instance must fail.

### 3.   Counsel's Failure to Challenge Expert Witness Testimony on Direct Appeal

Mr. Farmer next argues that counsel's failure to raise on appeal an objection to the investigating agent's expert witness status during the trial constituted ineffective assistance that would have changed the outcome of his case (Doc. 3, p. 10).

Mr. Farmer's claim fails to prove actual prejudice under *Strickland*.  Even if counsel had appealed this issue, the argument would have failed, as the Seventh Circuit Court of Appeals found no error in the witness's testimony when Mr. Farmer's co-defendant James Ellis raised this exact

issue on appeal. *United States v. Farmer*, 543 F.3d 360, 370-71 7th Cir. 2008).  There, the Court determined that the agent was qualified to testify as an expert and that the district court took the appropriate precautions "to minimize any potential prejudice" arising from testifying as both a fact witness and expert witness. *Id.* at 370.  Since this expert testimony was determined to be properly admitted, counsel's failure to raise this issue on appeal did not affect the outcome of Mr. Farmer's case.  Thus, Mr. Farmer, once again, cannot establish the actual prejudice necessary to demonstrate ineffective assistance with this claim.

    4.   Counsel's Failure to Challenge the Relevant Conduct Attributed to Mr. Farmer

Mr. Farmer contends that counsel provided ineffective assistance by failing to argue, at sentencing and on appeal, that the drug amounts attributed to him were speculative, not specifically proven, and not found by the jury (Doc. 3, page 11).  Mr. Farmer argues that he supplied counsel with pertinent objections that were not adequately pursued. *Id.*  Mr. Farmer points particularly to the fact that the amounts in the jury's special verdict and the PSR do not match, and that these "unproven" amounts were used to enhance his sentence in violation of his jury trial right as guaranteed by the United States Constitution and *Blakely v. Washington*, 542 U.S. 296 (2004). *Id.* at 11-12.  Mr. Farmer also adds in his response to the Government that his criminal history was incorrectly calculated as a category two instead of a category one under U.S.S.G. § 4A1.2(c) (Doc. 13, page 7).  Mr. Farmer states that had this been objected to, it would have impacted the outcome of his case (Doc. 3, p. 12).

Mr. Farmer has failed to establish actual prejudice from counsel's decision not to object to the fact that no specific amount of drugs was attributed to Mr. Farmer by the jury.  Other than a prior conviction, any factor that increases the *statutory maximum* of a sentence must be proven beyond

a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). However, when a jury has determined the statutory maximum based on its findings of the amount of drugs involved in the conspiracy, the Court may assess during sentencing the particular involvement of the defendant. *United States v. Knight*, 342 F.3d 697, 711-12 (7th Cir. 2003). Indeed, this was the procedure the Court followed in Mr. Farmer's case.

Here, the jury's finding of at least 5 kilograms of cocaine set a statutory maximum of life imprisonment. The Court's findings as to the particular drug quantities attributed to Mr. Farmer (in excess of 1.5 kilograms of cocaine base, 50 kilograms of cocaine, and 200 pounds of marijuana) therefore, could not have changed that maximum. As was addressed in the Addendum to the PSR, at sentencing, the Court is not bound by the Federal Rules of Evidence in considering whether a fact is proven by preponderance of the evidence (Doc. 755-1, p. 1). Moreover, the special jury verdict permitted the Court to sentence Mr. Farmer above the default statutory maximum of 20 years. *See United States v. Mietus*, 237 F.3d 866, 874 (7th Cir. 2001) ("[I]n drug cases under 21 U.S.C. §§ 841 and 846, before a defendant can be sentenced to a term of imprisonment above the default statutory maximum provided in § 841(b)(1)(C) or (D), *Apprendi* requires that a drug type and amount sufficient to trigger the higher statutory maximums of § 841(b)(1)(A) or (B) be charged in the indictment and found by the jury."). In the absence of a special jury verdict, however, the Court still could have sentenced Mr. Farmer to twenty years under the statute. Therefore, it is immaterial whether the quantities in the jury's and the Court's findings "match," since Mr. Farmer's sentence satisfied both *Apprendi* and the default statutory maximum for the indicted offense.

Additionally, there was no actual prejudice in the calculation of Mr. Farmer's criminal history as a category two instead of a category one. Mr. Farmer disputes the addition of two points

for Unlawful Possession of a Firearm/No Firearm Owners Identification Card (FOID) Card and Reckless Conduct (Misdemeanor) in the PSR's calculation of three criminal history points.  While the PSR is unclear as to whether the firearm possession charge was a felony or misdemeanor, the Court concludes that it was properly included in either instance because it did not fall under the list of excluded misdemeanors in U.S.S.G. § 4A1.2(c).  As a result, at least two points were correctly assessed against Mr. Farmer, and his criminal history category of two was appropriately calculated irrespective of whether his Reckless Conduct charge was improperly included.

In sum, no actual prejudice resulted from the jury not determining Mr. Farmer's specific relevant conduct amounts, or in the calculation of Mr. Farmer's criminal history.  As such, his claims of ineffective assistance based on these issues fail.

### 5.   Counsel's Failure to Ensure That the Jury Was Instructed Properly

Mr. Farmer also claims that counsel failed to instruct the jury to determine a precise amount as to the drug quantity involved rather than an estimate, and that this resulted in an inaccurate PSR and, in turn, a longer sentence than was supported by the facts found by the jury (beyond a reasonable doubt)(Doc. 3, p. 14).  This, he avers, could have altered the outcome of the case.  *Id.*

Mr. Farmer's argument, once more, does not establish the actual prejudice required for a successful ineffective assistance claim.  There was no error in asking the jury to return a special verdict that coincided with the ranges listed in § 841(b)(1).  *See United States v. Smith*, 308 F.3d 726, 742 (7th Cir. 2002) ("[W]e hold that the district court's special verdict form, reflecting ranges of drug amounts under § 841(b)(1), was in accordance with law and not an abuse of discretion.").  As noted earlier, the jury need only determine beyond a reasonable doubt the existence of a conspiracy and the facts that trigger a higher statutory penalty as provided in § 841(b).  *See Knight*, 342 F.3d at

710 (interpreting *Apprendi*).  This was accomplished when the jury returned a special verdict finding that the conspiracy involved at least 5 kilograms of cocaine.  As such, the jury was properly instructed and found, beyond a reasonable doubt, the facts necessary for an enhanced sentence.

Moreover, drug quantities are *not* otherwise an element of the offense under § 841. *See United States v. Bjorkman*, 270 F.3d 482, 491 (7th Cir. 2001) (declining to overrule *United States v. Brough*, 243 F.3d 1078 (7th Cir. 2001), holding that drug quantity is not legally an element of § 841).  As a result, in fashioning the appropriate sentence, a court need only find specific drug quantities by a preponderance of the evidence which, of course, is what the Court did here.  Therefore, in following these procedures, neither *Apprendi* nor the Constitution was violated and Mr. Farmer, once again, cannot establish any actual prejudice.

### 6. Counsel's Failure to Raise Objections to the PSR at Sentencing or on Direct Appeal

Mr. Farmer alleges that counsel provided ineffective assistance by failing to raise objections to particular sections of the PSR that Mr. Farmer had submitted to him in writing, and that counsel failed in objecting to these "presumed" statements in court and on direct appeal (Doc. 3, page 14).

Mr. Farmer has failed to prove that counsel's assistance was deficient in objecting to the PSR.  The record shows that objections to the PSR were lodged by both counsel and Mr. Farmer between June 5 and 13, 2007.  In fact, counsel's filing was amended to include Mr. Farmer's personally submitted objections (Doc. 750).  Furthermore, the record at sentencing shows that Mr. Farmer's objections to the PSR were revisited, and that counsel argued against some of these so-called "presumptions" in the PSR:

> MR. REARDON:  I have a question to ask.  My response to the presentence report—
>
> THE COURT:  Right.

Page 14 of  22

MR. REARDON:  —will that become a matter of record?

THE COURT:  It will not only be a matter of record, I will actually sign the sheet and check off that I overruled your objections.  So not only what I said here today, but when the case goes up, all of your objections are noted in writing.  And I have actually signed off that I have denied those.

MR. REARDON:  I appreciate that.  Because we relied very heavily on the language in the <u>Booker</u> case.  I know they're a confusing decision, they're confusing to me, from the Seventh Circuit, the government decided.  But I, number one, have objected to the addition of two points for the weapons, four points for being a leader, and for their finding of a 38-point level.  All of which based upon the <u>Booker</u> that I don't believe were presented to the jury.

THE COURT:  What you say is true.  I just think that the law in the Seventh Circuit is contrary to that position.  But I've noted it and I'm now prepared to hear what you think is a reasonable sentence under the statute, not the guidelines.

MR. REARDON:  I appreciate that.  So it's clear where we are.

Under my computation, as best I could, a sentence between 120 and 150 months would be appropriate because of our relying very heavily upon that which was proven in trial, as against what was proven at the police station.

(Doc. 846, pp. 6-7).  This dialogue demonstrates that objections were adequately raised at sentencing.  As for raising these objections on appeal, once again, Mr. Farmer has failed to establish that counsel's conduct was objectively unreasonable, or that the conduct violated *Anders* (see *supra*, pp. 9-10).  Nor has Mr. Farmer demonstrated actual prejudice in his conclusory statement that this might have changed the outcome of his sentencing (Doc. 3, p. 14); especially when considering that he was sentenced well below the Guidelines range.  Therefore, Mr. Farmer has not demonstrated that counsel's objections to the PSR constituted deficient conduct that was objectively unreasonable, or that such conduct, in any way, actually prejudiced the outcome of his case.

    7.  Counsel's Confusion over the Supreme Court's Holding in *United States v. Booker*

Mr. Farmer next contends that counsel's confusion over the Supreme Court's decision in *Booker* resulted in ineffective assistance that prejudiced the outcome of his case (Doc. 3, pp. 14-15).

Page 15 of  22

Mr. Farmer has failed to meet his burden of establishing that counsel's conduct fell below the standard of objectively reasonable assistance. The record shows that counsel was competent enough to raise *Booker*-based objections during sentencing. Had counsel's failure to understand *Booker* fallen to the level of "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," he likely would not have raised those objections at all. *Strickland*, 466 U.S. at 687.

Even if counsel were truly ineffective in assisting Mr. Farmer due to confusion over *Booker*, it would not have resulted in actual prejudice. After affirming *Apprendi*, the *Booker* Court held that the Federal Sentencing Guidelines were "effectively advisory." 543 U.S. at 245. The Court reiterated this when sentencing Mr. Farmer to twenty years imprisonment—far below the Guidelines recommendation of life imprisonment. As *Booker* was correctly applied during sentencing, any confusion over the case did not result in a longer sentence for Mr. Farmer. Since there is no basis for finding either objectively deficient conduct on the part of counsel or actual prejudice, Mr. Farmer's seventh claim of ineffective assistance—based on counsel admitting that the *Booker* decision was "confusing"—also fails.

8.   Counsel's Failure to Challenge the Government's Lack of Proof that Mr. Farmer was Involved in a Conspiracy

Mr. Farmer argues that counsel was ineffective because he failed to file a post-conviction motion on the grounds that the witnesses were unreliable and that the required elements of a conspiracy were never proven (Doc. 3, p. 15). Mr. Farmer notes that he submitted a supplemental memorandum *pro se* in support of appealing the issue of sufficiency of the evidence since counsel would not raise it on appeal.[2] *Id.* at 15-16.

_____

[2]It was properly excluded by the court, as Mr. Farmer was represented by counsel at the time.

Mr. Farmer has, once more, failed to demonstrate either actual prejudice or deficient counsel performance in this argument.  The record demonstrates sufficient evidence, including co-defendant Howliet's and McGee's testimony (*supra* pp. 6-8), upon which the jury could find that Mr. Farmer was involved in a drug conspiracy.  This negates any potential prejudice from counsel's decision not to file any post-trial motions.  Further, this evidence indicates that raising sufficiency of the evidence on appeal was not an argument "clearly stronger" than raising the Speedy Trial Act.  Thus, once again, Mr. Farmer is unable to overcome the presumption that counsel effectively exercised his reasonable professional judgment. *Gray*, 800 F.2d at 646.  Because Mr. Farmer cannot satisfy either prong of *Strickland*, his claim of ineffective assistance in this instance fails.

> 9. <u>Counsel's Failure to Challenge Certain Aspects of Mr. Farmer's Sentence on Direct Appeal</u>

Mr. Farmer claims that counsel was ineffective because on appeal counsel failed to renew objections to the four-point enhancement for Mr. Farmer's leadership role and the two-point enhancement for possession of a weapon, nor did counsel file an *Anders* brief in this regard (Doc. 3, p. 16).  Mr. Farmer concludes that this would have altered the outcome of the case.  *Id.*

Once again, Mr. Farmer fails to demonstrate that counsel's performance was objectively unreasonable.  Appellate counsel is not required under *Anders* to provide to his client a brief detailing all potential nonfrivolous claims that could be raised on appeal, and then raise all such issues. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Neither *Anders* nor any other decision of this Court suggests, however, that [an] indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.").  Further, the record as a whole indicates sufficient evidence to support the application of both enhancements.

For example, the record demonstrates that multiple loaded firearms were recovered from Mr. Farmer's residence (Doc. 851, pp. 939-40). These weapons were then linked to the conspiracy through the presence of 39 grams of marijuana at the residence, satisfying the two-point enhancement for possession of a dangerous weapon during the offense pursuant to U.S.S.G. § 2D1.1(b)(1) (Doc. 755, para. 19). Numerous co-defendants testified that they saw Mr. Farmer carrying a weapon during drug transactions (Doc. 755-1, p. 3). There was sufficient evidence, then, for the Court to find at sentencing that the weapons enhancement was applicable based on a preponderance of the evidence (the correct standard of proof during sentencing as discussed, *supra* p. 11). Therefore, this would have been an objectively weaker argument to raise on appeal.

The record also contains testimony by Mr. Derrick Burton as to Mr. Farmer's known leadership role in the conspiracy:

> Q: So you dealt on one hand with Ellis, correct?
> A: Yes.
> Q: And on another hand with Farmer?
> A: Yeah.
> Q: And you have testified here in direct examination that Farmer charged less?
> A: Yeah. He was the head man. I mean, why wouldn't he? If he wanted my business and if J.T. was getting drugs from him, that's common sense. If you want my business and you the man, naturally you going to undercut the next man. I mean, you the man.

(Doc. 848, pages 357-58). The testimony cited in this Order thus far implicates (at a minimum) James T. Ellis, Jerel Brown, Manfred McGee, and Charles Howliet, as mid-level sellers for Mr. Farmer. Thus, there is sufficient evidence for an adjustment for leadership of an organization that involved five or more participants pursuant to U.S.S.G. § 3B1.1(a). Consequently, it also would have been an objectively weak argument on appeal to suggest that Mr. Farmer's leadership role was

not sufficiently developed or proven by a preponderance of the evidence at sentencing. As Mr. Farmer has failed to establish objectively unreasonable performance in counsel's decision not to appeal these enhancements, his ineffective assistance claim in this instance, once again, fails.

  10. Counsel's Failure to Raise Other Issues on Direct Appeal

  Mr. Farmer claims ineffective assistance in counsel's failure to raise other issues on direct appeal; specifically, counsel's failure to object to the statement in the Addendum to the PSR that Mr. Farmer's FOID had expired (Doc. 3, pp. 16-17). Mr. Farmer argues that this fact was clearly used to enhance his sentence, that it could not be proven that the guns belonged to him (because both he and his girlfriend had valid FOID cards, of which he has provided photocopies), and that the guns were not proven to be in connection with his convicted offense (Doc. 13, p. 11).

  Mr. Farmer has failed to demonstrate actual prejudice on this claim, as possessing a valid FOID card does not reverse the presumption that weapons in proximity to drugs are connected with drug trafficking unless this presumption is clearly improbable. *See* U.S.S.G. § 2D1.1, Application Note 3 ("The adjustment should be applied if the weapon was present, unless it was clearly improbable that the weapon was connected with the offense."); *see also United States v. Grimm*, 170 F.3d 760, 767 (7th Cir. 1999) ("[G]uns found in close proximity to illegal drugs are presumptively considered to have been used in connection with the drug trafficking offense.") (*citing United States v. Adams*, 125 F.3d 586, 597 (7th Cir. 1997)). This presumption, notwithstanding the possession of a valid FOID card, was explicitly set forth in the Addendum to the PSR (Doc. 755-1, p. 3).

  Here, four fully-loaded semiautomatic weapons were found in Mr. Farmer's apartment along with 39 grams of marijuana (Doc. 755-1, p. 3). Mr. Farmer has not demonstrated that it is clearly improbable that the loaded weapons were not in connection with the drug conspiracy. Instead, he

argues that the Government failed to prove his connection to (or ownership of) the weapons. This, however, incorrectly places the burden of proof on the Government. *See Bjorkman*, 270 F.3d at 492 ("In applying § 2D1.1(b)(1), we have repeatedly held that 'the Government bears the initial burden of demonstrating that the defendant possessed a weapon in a place where drugs were present,' and that 'once the Government meets its burden, the defendant must demonstrate that it was clearly improbable that the weapon was connected to the offense.'") (quoting *United States v. Booker*, 248 F.3d 683, 689 (7th Cir. 2001)). Given this presumption and the express findings of the Court, no actual prejudice can be demonstrated by counsel's decision not to appeal this statement regarding Mr. Farmer's FOID card; especially since Mr. Farmer's actual sentence was well below the Guidelines range as calculated with this enhancement.

11. Supplemental Ground for Relief

Mr. Farmer asserts that his sentence was unfairly imposed because of discriminatory drug ratios (100-1 crack to powder cocaine), and that his sentence does not comport with 18 U.S.C. § 3553(a) (Doc. 6, p. 1). Mr. Farmer cites the Supreme Court decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Spears v. United States*, 129 S. Ct. 840 (2009), as support for the Court to find that a lower ratio is more appropriate as a matter of policy and re-sentence Mr. Farmer accordingly. Once again, Mr. Farmer's argument lacks merit.

First, the Court correctly considered the Guidelines as merely advisory. Furthermore, as the Government notes, Mr. Farmer's sentence of 20 years imprisonment was well below the Guideline range *without* consideration of the crack cocaine. The excess of 50 kilograms of cocaine attributed to Mr. Farmer in the PSR and accepted by the Court would have yielded an offense level of 36 which, along with the applicable adjustments and Mr. Farmer's criminal history category of two,

would yield a sentencing range of 360 months to life (Doc. 10, pp. 19-20).  As a result, Mr. Farmer's sentence was not prejudiced by the 100-1 ratio for crack cocaine used in the Guidelines.

The Court also duly considered the factors outlined in § 3553(a) in highlighting Mr. Farmer's age and chance of recidivism upon release (Doc. 846, p. 9).  The purposes of § 3553(a) therefore were in no way subsumed by the 100-1 ratio.  More pertinently, as noted above, adjusting the ratio would not have lessened Mr. Farmer's sentence.  In light of the foregoing, his sentence was not contrary to his rights to due process and a fair trial.

The Government also points out that this claim should have been raised on appeal (Doc. 10, p. 18), and Mr. Farmer argues in his reply that this is another instance of ineffective assistance (Doc. 13, p. 12).  Although it is unclear whether Mr. Farmer intended to raise this as an ineffective assistance claim as well, the Court considers it as such, given its duty to construe *pro se* pleadings liberally.  *See*, *e.g.*, *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).  With this in mind, Mr. Farmer still has failed to demonstrate actual prejudice under *Strickland* because he received a sentence below what was recommended for the other drug amounts attributed to him in the PSR, and thus, this would have been an objectively weaker argument to raise on appeal.

### 12. Mr. Farmer's Additional Claims in Reply to Government's Response

In his reply to the Government's response, for the first time,  Mr. Farmer sets forth claims that the Court was without subject matter jurisdiction to hear his criminal case due to error in the indictment (Doc. 13, pp. 1-2).  As best as the Court can construe, Mr. Farmer argues that there was a failure to include a definite statement of essential facts pursuant to Rule 7 of the Federal Rules of Criminal Procedure; more specifically, Mr. Farmer alleges there was a failure to include a definite location within the exclusive jurisdiction of the United States for the alleged crime as discussed by

*United States v. Gabrion*, 517 F.3d 839 (6th Cir. 2008). *Id.* Mr. Farmer filed a "Brief in Support" of this purported lack of jurisdiction (Doc. 13-1).

The record shows that Mr. Farmer was indicted for conspiracy to distribute at least 5 kilograms of a cocaine product and at least 100 kilograms of marijuana for a ten year period in specific counties within Illinois as well as other various states (Doc. 1). This indictment "fairly apprised the defendant[] of those activities alleged to be unlawful." *United States v. Grizaffi*, 471 F.2d 69, 73 (7th Cir. 1972). Mr. Farmer's additional claims regarding *Gabrion* and the jurisdictional reach federal law to acts occurring within Illinois are confused, frivolous, and totally without merit. As such, they will not be analyzed further by the Court.

In reference to this jurisdictional claim, Mr. Farmer argues that his due process rights were violated. This generalized due process claim is redundant of Mr. Farmer's more specific claims of ineffective assistance of counsel—none of which have any merit. As such, this claim is also rejected as meritless.

<u>CONCLUSION</u>

For the foregoing reasons, Petitioner Douglas Farmer's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED**, and this action is **DISMISSED with prejudice**. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 08/12/10

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge